UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Merrimack Congregation of
Jehovah's Witnesses

     v.                                     Civil No. 10-cv-581-JD

Town of Merrimack and the
Merrimack Zoning Board of
Adjustment


## REPORT AND RECOMMENDATION

In reliance on the state and federal Constitutions, several sections of the federal Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, and section 677 of the New Hampshire Revised Statutes Annotated, the Merrimack Congregation of Jehovah's Witnesses ("the Congregation") challenges a decision of the Merrimack Zoning Board of Adjustment ("ZBA") to deny its application for a special exception to build a Kingdom Hall (i.e., a church) on a parcel situated within the Town of Merrimack's residential district. Before me for a Report and Recommendation is a motion for a preliminary injunction in which plaintiff asks the court to enjoin the defendants from enforcing Section 2.02.1 of the Merrimack Zoning Ordinance ("MZO") against the Congregation's construction or use of a church in the residential district of the Town of Merrimack. Specifically, plaintiff applies the criteria for preliminary injunctive relief

to its claim that Section 2.02.1 of the MZO, on its face, is a prior restraint barred by the First Amendment to the United States Constitution.  Defendants object.  The court heard oral argument on this matter on January 19, 2011.  Based on the parties' briefing and the oral argument, I recommend that the Congregation's motion for preliminary injunctive relief be denied.

## Background

Except as otherwise noted, the following facts have been drawn from plaintiff's verified complaint.

On August 11, 2010, the Congregation entered into a contract with Ronald Therrien to purchase a parcel at 63 Wire Road in the residential district of Merrimack.  It hoped to begin construction of a Kingdom Hall on the property in the spring of 2011.  Pursuant to its contract with Therrien, the Congregation had ninety days to obtain a special exception and close on the property.

The Congregation petitioned for a special exception on September 8, 2010.  Section 2.02.1 of the MZO specifies the conditions under which churches may be located in the residential district, and provides that the ZBA may grant a

special exception for a church in the residential district when

the following conditions are met:

     (a) The specific site is an appropriate location
for such a use or uses in terms of overall community
development.

     (b) The use as developed will not adversely
affect the neighborhood and shall produce no
diminution of real estate values in the neighboring
area.

     (c) There will be no nuisance or serious hazard
to vehicles or pedestrians.

     (d) That an adequate parking area is provided for
motor vehicles on the premises.

     (e) A buffer shall be erected and maintained to
screen existing residential uses.  Buffers may be
fence screens, dense plantings of suitable trees and
shrubbery, or naturally occurring shrubs and trees.

     (f) The use as developed will be restricted for
church purposes only.  No commercial use of a church
within the residential zone will be allowed.

Compl. ¶ 20.  After a hearing, the ZBA denied the Congregation's

petition, based on the following findings of fact:

   1.   The site **is not** an appropriate location for the
proposed use in terms of overall community
development because: **the basic law says to keep
uses separated; the church would not be a
residential use in a residential zone**.

   2.   The proposed use, as developed, **will not**
adversely affect the neighborhood because: **the
church building would be modest, well-landscaped**

**and designed to fit into a conservative model for the neighborhood**.[1]

3.    There **will be** a nuisance or serious hazard to vehicles or pedestrians because: **additional traffic to the area would add to the existing significant traffic volume, thus increasing hazard to vehicles and pedestrians**.

4.    Adequate and appropriate facilities **will be** provided for the proper operation of the proposed use because: **fifty-two parking spaces would be provided to accommodate 33 to 50 cars**.

5.    A buffer **shall be** erected and maintained to screen existing residential uses: **a buffer of evergreens will be provided along the south, north and west sides of the property**.

6.    The use as developed **will be** restricted for church purposes only.

Compl. ¶ 25 (emphasis in the original).  The Congregation requested a rehearing to address the ZBA's first and third findings.  The ZBA denied the request.

On December 3, 2010, Therrien told the Congregation that the purchase and sale agreement was null and void, due to the Congregation's failure to obtain a special exception, and he

---

[1] According to a set of amended draft minutes submitted by defendants in support of their objection to plaintiff's request for preliminary injunctive relief, the ZBA's second finding was amended to read:

The proposed use, as developed, **will** adversely affect the neighborhood because: **construction of the church facility will produce a diminution of real estate values in the neighboring area**.

Defs.' Mem. of Law, Ex. C (document no. 11-3), at 8 (emphasis in the original).

further indicated that he was putting the property back on the
market.

In Count 1 of its complaint, the Congregation asserts that
the MZO's special-exception requirement for churches in the
residential district is a prior restraint that violates the New
Hampshire Constitution and the First Amendment to the United
States Constitution, both facially and as applied.

### The Legal Standard

When determining whether to grant preliminary injunctive
relief, the court must assess a

> set of four factors: "(i) the likelihood that the
> movant will succeed on the merits; (ii) the
> possibility that, without an injunction, the movant
> will suffer irreparable harm; (iii) the balance of
> relevant hardships as between the parties; and (iv)
> the effect of the court's ruling on the public
> interest."

Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d
36, 40 (1st Cir. 2010) (quoting Waldron v. George Weston
Bakeries, Inc., 570 F.3d 5, 9 (1st Cir. 2009)).  "The first
inquiry is the most important element of the preliminary
injunction assessment: '[I]f the moving party cannot demonstrate
that he is likely to succeed in his quest, the remaining factors
become matters of idle curiosity.' "  United States v. Weikert,
504 F.3d 1, 5 (1st Cir. 2007) (quoting New Comm Wireless Servs.,
Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

Where, as here, the plaintiff "does not seek a traditional, prohibitory preliminary injunction, but instead asks for a mandatory preliminary injunction, which requires affirmative action by the non-moving party in advance of trial," Braintree, 622 F.3d at 40-41, that is, when a plaintiff seeks an injunction that "alters rather than preserves the status quo," id. at 41, relief "normally should be granted only in those circumstances when the exigencies of the situation demand such relief," id. (quoting Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency, 649 F.2d 71, 76 n.7 (1st Cir. 1981)). "Nevertheless, those exigencies should still be measured according to the same four-factor test, as '[t]he focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.' " Id. (quoting Crowley v. Local No. 82, Furn. & Piano Moving, Furn. Store Drivers, Helpers, Warehousemen, & Packers, 679 F.2d 978, 996 (1st Cir. 1982), rev'd on other grounds by 467 U.S. 526 (1984)) (footnote omitted).

### Discussion

In the motion under consideration, the Congregation asks the court to enter a preliminary and permanent injunction barring the defendants from enforcing Section 2.02.1 of the MZO against the construction or use of a church in the residential district of Merrimack.  Plaintiff argues that it is entitled to

such an injunction because it has satisfied all four of the factors set out in Braintree.  Defendants disagree.  Because the Congregation has not established a likelihood of success on the merits, I recommend that the motion for preliminary injunctive relief be denied.  See Weikert, 504 F.3d at 5; see also Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 37 (1st Cir. 2008) ("Since NJI has no probability of success on the merits of its claim, we need not address the other factors in the preliminary injunction determination.").

As a preliminary matter, it is necessary to identify with some precision the claim that forms the basis for the Congregation's request for a preliminary injunction, so that the court may employ the correct analytical scheme when assessing plaintiff's likelihood of success on the merits.  Factually, Count 1 is based upon the ZBA's denial of the Congregation's petition for a special exception to build a Kingdom Hall at the location of its choice.  Legally, the complaint indicates that the federal claim in Count 1 is based on the First Amendment, but the complaint does not further specify which of the First Amendment's six enumerated rights the Congregation is seeking to vindicate.  A section heading in the Congregation's Memorandum of Law, doc. no. 5-1, suggests that the Congregation is pursuing claims under the Free Speech Clause, the Free Assembly Clause, and the Free Exercise Clause.  Counsel for plaintiff took that

position at the hearing, and characterized the federal
constitutional claim in Count 1 as a hybrid along the lines
described in Employment Division, Department of Human Resources
v. Smith, 494 U.S. 872 (1990).

　　　While the Congregation contends that Count 1 is a hybrid
claim, it draws the proposition that the First Amendment
protects a religious organization's right to construct a house
of worship at the location of its choice from a case in which
the plaintiff relied exclusively on the Free Exercise Clause.
See Hollywood Cmty. Synagogue, Inc. v. City of Hollywood, 436 F.
Supp. 2d 1325, 1329 (S.D. Fla. 2006).  The Congregation
identifies no case in which a claim with a similar factual basis
has been litigated as anything other than a straight free-
exercise claim.  Moreover, there is nothing in the ordinance
that speaks to the right of the Congregation or its members to
engage in protected expression or to assemble.  All the
ordinance regulates is plaintiff's ability to construct a
building at the location of its choice.  Accordingly, the court
analyzes the First Amendment claim in Count 1 as a free-exercise
claim.

　　　"The Free Exercise Clause [of the First Amendment]
guarantees that 'Congress shall make no law respecting an
establishment of religion, or prohibiting the free exercise
thereof.' "  Wirzburger v. Galvin, 412 F.3d 271, 280 (1st Cir.

2005) (quoting U.S. Const. amend I).  The Free Exercise Clause
"has been applied to the States through the Fourteenth
Amendment." <u>Id.</u> (citing <u>Cantwell v. Connecticut</u>, 310 U.S. 296,
303 (1940)).  "The protections provided by the Free Exercise
Clause may be broken down into a number of conceptual categories
. . . .  First and foremost, the Free Exercise Clause entails
an absolute prohibition on government infringement on the
'freedom to believe.' " <u>Id.</u> (quoting <u>Torcaso v. Watkins</u>, 367
U.S. 488, 492-93 (1961)).  The free-exercise clause also
subjects government actions to strict scrutiny when they
"discriminate on the basis of religious belief or status," <u>id.</u>
at 281, or "prohibit[ ] any religious act or conduct," <u>id.</u>
However, "[t]he Supreme Court has stated its reluctance to
strike down 'legislation which imposes only an indirect burden
on the exercise of religion, <u>i.e.</u>, legislation which does not
make unlawful the religious practice itself.' " <u>Id.</u> (quoting
<u>Braunfeld v. Brown</u>, 366 U.S. 599, 606 (1961)).

In <u>Hollywood</u>, a religious organization challenged the
constitutionality of a zoning ordinance that permitted the
city's Development Review Board to grant a special exception so
long as it made the following findings:

a.   That the use is compatible with the existing
     natural environment and other properties within
     the vicinity;

b.   That there will be adequate provision for safe
traffic movement, both vehicular and pedestrian,
both internal to the use and in the area which
will serve the use;

c.   That there are adequate setbacks, buffering, and
general amenities in order to control any adverse
effects of noise, light, dust and other potential
nuisances; and

d.   That the land area is sufficient, appropriate and
adequate for the use as proposed.

436 F. Supp. 2d at 1334 (citation to the record omitted).  While

the City of Hollywood argued that the foregoing ordinance

"sufficiently restrict[ed] the discretion of City regulators and

[was] therefore a valid time, place, and manner restriction,"

id. at 1336, the court disagreed, holding that the ordinance was

"an unconstitutional prior restraint because it lack[ed]

'narrow, objective, and definite standards' to guide city

officials in their review of applications for a Special

Exception and thus provide[d] City officials unbridled

discretion in their consideration of the application."  Id.

(quoting Lady J. Lingerie, Inc. v. City of Jacksonville, 176

F.3d 1358, 1362 (11th Cir. 1999)) (footnote omitted).

In this case, the Congregation relies on Hollywood and

argues that it has a likelihood of success on the merits of its

First Amendment claim.  The court is not persuaded.

To begin, Hollywood is not binding authority on this court

or any other; it is a district court decision.  Moreover,

several aspects of that decision suggest that the First Circuit
would be unlikely to find it persuasive.  For one thing,
notwithstanding the fact that the Hollywood plaintiff brought a
free-exercise claim, the decision, without any explanation,
treats the Hollywood zoning ordinance as a "time, place, and
manner" regulation of the sort that is litigated in free-
expression cases.  See 436 F. Supp. 2d at 1335.  Then, the
decision relies exclusively on free-speech cases[2] and the
standards established therein to reach its conclusion that the
Hollywood zoning ordinance is facially unconstitutional.  See
id. at 1335-38.

---

[2] See City of Renton v. Playtime Theatres, Inc., 475 U.S. 41
(1986) (analyzing ordinance restricting location of adult theatres as
regulation of speech); Lady J. Lingerie, 176 F.3d 1358 (analyzing
zoning ordinances regulating adult entertainment under free-speech
standards articulated in City of Renton); CAMP Legal Def. Fund, Inc.
v. City of Atlanta, 451 F.3d 1257 (11th Cir. 2006) (analyzing Atlanta
Outdoor Festivals Ordinance as regulation of speech); Thornhill v.
Alabama, 310 U.S. 88 (1940) (analyzing statute that banned loitering
and picketing as regulation of speech); Shuttlesworth v. City of
Birmingham, 394 U.S. 147 (1969) (analyzing ordinance requiring
permits for parades, processions, or public demonstrations as
regulation of speech); United States v. Frandsen, 212 F.3d 1231 (11th
Cir. 2000) (analyzing federal regulation requiring permit to publicly
express views in national parks as regulation of speech); Ward v. Rock
Against Racism, 491 U.S. 781 (1989) (analyzing city's sound-
amplification guidelines for public park as regulation of speech);
Cooper v. Dillon, 403 F.3d 1208 (11th Cir. 2005) (analyzing statute
governing disclosure of information from internal investigations of
law-enforcement officers as regulation of speech); Schneider v. New
Jersey, 308 U.S. 147 (1939) (analyzing statutes governing canvassing
and distribution of handbills and circulars as regulations of speech);
Se. Promotions, Ltd. v. Conrad, 420 U.S. 546 (1975) (analyzing
decision to deny permit to use city auditorium to present a play as
regulation of speech).

Beyond that, the Hollywood decision simply assumes, again without explanation, that the right of a religious organization to build a house of worship at its preferred location is protected by the Constitution as the free exercise of religion. In Wirzburger, the First Circuit rather comprehensively described what is protected by the free-exercise clause, 412 F.3d at 279-82, and noted the Supreme Court's reluctance to strike down legislation that imposes only indirect burdens on the exercise of religion and that does not make religious practices themselves unlawful.  Id. at 281 (citation omitted). Consonant with those principles are the opinions in Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, 699 F.2d 303 (6th Cir. 1983), and Lighthouse Institute for Evangelism, Inc. v. City of Long Branch, 510 F.3d 253 (3d Cir. 2007).

In Lakewood, "[t]he principal question presented . . . [was] whether a municipal zoning ordinance, which prohibit[ed] the construction of church buildings in virtually all residential districts in the city, violate[d] the Free Exercise Clause of the First Amendment."  699 F.2d at 303.  The plaintiff in Lakewood "claim[ed] that the ordinance infringe[d] its right to freedom of religion by prohibiting it from constructing

Kingdom Hall on [a] lot it own[ed]."  Id. at 305.  The Sixth
Circuit disagreed, based upon determination that "the
construction of a church building in a residential district
. . . has no religious or ritualistic significance for the
Jehovah's Witnesses . . . [and is] not a fundamental tenet of
the Congregation's religious beliefs."[3]  Id. at 306-07.  On that
basis, the court reasoned that "[t]he burdens imposed on the
Congregation by the ordinance are an indirect financial burden
and a subjective aesthetic burden."[4]  Id. at 307.  The court
concluded:

> The Supreme Court's statement in Braunfield [sic]
> accurately summarizes our conclusion about the nature
> of the Congregation's interest and the nature of the
> City's burden on that interest.  The Lakewood
> ordinance "simply regulates a secular activity and, as
> applied to the appellants, operates so as to make the
> practice of their religious beliefs more expensive."
> 366 U.S. at 605 (emphasis added).  It does not
> pressure the Congregation to abandon its religious
> beliefs through financial or criminal penalties.
> Neither does the ordinance tax the Congregation's
> exercise of its religion.  Despite the ordinance's
> financial and aesthetical imposition on the

---

[3] The court further noted: "The zoning ordinance does not prevent
the Congregation from practicing its faith through worship whether the
worship be in homes, schools, other churches, or meeting halls
throughout the city.  The ordinance prohibits the purely secular act
of building anything other than a home in a residential district."
Lakewood, 699 F.2d at 307.

[4] The court continued by pointing out: "[T]his is not a case
where the Congregation must choose between exercising its religious
beliefs and forfeiting government benefits or incurring criminal
penalties.  No pressure is placed on the Congregation to abandon its
beliefs and observances."  Lakewood, 699 F.2d at 307.

>       Congregation, we hold that the Congregation's freedom
>       of religion, as protected by the Free Exercise Clause,
>       has not been infringed.

Id. at 307-08 (parallel citations omitted).

In Lighthouse, the Third Circuit was faced with deciding "whether a municipality may exclude religious assemblies or institutions from a particular zone, where some secular assemblies or institutions are allowed, without violating the Free Exercise Clause of the First Amendment."  510 F.3d at 256. In holding that the redevelopment plan challenged by the plaintiffs in Lighthouse, which excluded their church from the "Broadway Corridor" area of Long Branch, did not violate the Free Exercise Clause, the court relied on Lakewood along with Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 654 (10th Cir. 2006), and Messiah Baptist Church v. County of Jefferson, 859 F.2d 820, 826 (10th Cir. 1988) ("nor does a church have a constitutional right to build its house of worship where it pleases").

After pointing out that "Lighthouse [had] not placed any evidence in the record that the inability to locate its premises at [its chosen location] or within the specific zoning district at issue here would negatively affect its ability to practice its religion," Lighthouse, 510 F.3d at 274, the court stated that to succeed on a free-exercise claim based upon a zoning

14

regulation, "a plaintiff [must] articulate why it is a burden <u>on its religious exercise</u> (as opposed, for instance, to its pocketbook or its convenience)," <u>id.</u> at 275 (citing <u>Braunfeld</u>, 366 U.S. at 606-07)). The court concluded:

> While we do not question that the act of assembling for prayer or worship is religious in nature, we do not assume, without any allegation in this sense on the part of the plaintiff, that obtaining use of the particular property at issue here has any religious significance. This alone would be reason to affirm the District Court's grant of summary judgment to Long Branch on the Free Exercise claim.

<u>Lighthouse</u>, 510 F.3d at 275.

The facts of this case have much in common with those of <u>Lakewood</u> and <u>Lighthouse</u>. At the hearing, the Congregation indicated the centrality of the Wire Road location, and pointed out the convenience that location would afford its members. But, other than representing that meeting as a congregation was religiously important, plaintiff was unable to identify anything religiously significant about the property at 63 Wire Road.

Given the First Circuit's adherence to <u>Braunfeld</u>, as expressed in <u>Wirzburger</u>, 412 F.3d at 281, this court is persuaded that the First Circuit would reject <u>Hollywood</u> and adopt the reasoning of <u>Lakewood</u> and <u>Lighthouse</u> under which the ZBA action at issue in this case does not rise to the level of a

violation of the Free Exercise Clause.[5]  Accordingly, the
Congregation has failed to demonstrate a likelihood of success
on the merits of its facial challenge to Section 2.01.1 of the
MZO.

Because the Congregation has not shown a likelihood of
success on the merits, it is not entitled to the preliminary
injunction it seeks.  See Weikert, 504 F.3d at 5; Naser
Jewelers, 513 F.3d at 37.

### Conclusion

For the reasons given, I recommend that the plaintiff's
motion for preliminary injunctive relief, doc. no. 5, be denied.

Any objections to this report and recommendation must be
filed within fourteen (14) days of receipt of this notice.
Failure to file objections within the specified time waives the
right to appeal the district court's order.  See Unauth. Practice

---

[5] While the First Circuit has acknowledged that "proximity to
their houses of worship is for some groups a significant component of
their religious practice," Boyajian v. Gatzunis, 212 F.3d 1, 10 (1st
Cir. 2000), plaintiff in this case has made no showing that, from a
religious perspective, its members are analogous to "Orthodox Jews
. . . [who] believe they are prohibited by the Torah, the Jewish
Bible, from using automobiles on their Sabbath [and] therefore must
live within walking distance of a synagogue," id. (citing LeBlanc-
Sternberg v. Fletcher, 67 F.3d 412, 430 (2d Cir. 1995); Douglas
Laycock, State RFRAs and Land Use Regulation, 32 U.C. Davis L. Rev.
755, 779-80 (1999)).

of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
Landya B. McCafferty
United States Magistrate Judge

Date:  January 24, 2011

cc:  Garry R. Lane, Esq.
     Michael J. Tierney, Esq.